**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| AMANA SOCIETY, INC. and<br>AMANA FARMS, INC.,<br><br>        Plaintiffs,<br><br>vs.<br><br>GHD, INC. and<br>EXCEL ENGINEERING, INC.,<br><br>        Defendants. | No. 10-CV-168-LRR<br><br>**ORDER** |

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.*   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*  *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . *3*
      *A.*    *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
      *B.*    *GHD's Representations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
      *C.*    *Amana Farms and GHD's Contract* . . . . . . . . . . . . . . . . . . . . . *4*
      *D.*    *Plaintiffs' Allegations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

*V.*    *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
      *A.*    *Negligent Misrepresentation* . . . . . . . . . . . . . . . . . . . . . . . . . *5*
            *1.*   *Duty of care* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
            *2.*   *"In the business of supplying information"* . . . . . . . . . . . . *7*
      *B.*    *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

*VI.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

*I. INTRODUCTION*

      The matter before the court is Defendant GHD, Inc.'s ("GHD") "Motion For Partial Dismissal of the Amended Complaint" ("Motion") (docket no. 25).

## II. PROCEDURAL BACKGROUND

On December 27, 2010, Plaintiff Amana Society, Inc. ("Amana Society") filed a six-count Complaint (docket no. 2). Amana Society alleges negligent misrepresentation (Count I), breach of contract (Count II), breach of warranty (Count III) and breach of professional standard of care (Count IV) against GHD. Amana Society further alleges negligent misrepresentation (Count V) and breach of professional standard of care (Count VI) against Defendant Excel Engineering, Inc. ("Excel").

On May 16, 2011, Amana Society filed an Amended Complaint (docket no. 23) in the instant action, asserting the same claims as in the original Complaint. However, the Amended Complaint adds Amana Farms, Inc. ("Amana Farms") as a plaintiff in each of the six counts. Further, Amana Society no longer asserts Counts II and III against GHD. Thus, Amana Farms is currently the sole plaintiff in the breach of contract (Count II) and breach of warranty (Count III) claims against GHD.

On June 1, 2011, GHD filed the Motion. GHD asks the court to dismiss Count I, which alleges negligent misrepresentation, under Federal Rule of Civil Procedure 12(b)(6). On June 17, 2011, Amana Society and Amana Farms (collectively, "Plaintiffs") filed a Resistance (docket no. 27). On June 27, 2011, GHD filed a Reply (docket no. 28). GHD requests oral argument on the Motion. The court finds that oral argument is unnecessary. The Motion is fully submitted and ready for decision.

## III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal on the basis of "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. at ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *accord B & B Hardware, Inc. v. Hargis Indus.,*

*Inc.*, 569 F.3d 383, 387 (8th Cir. 2009). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* ___ U.S. at ___, 129 S. Ct. at 1949 (citing *Bell Atl.*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at ___, 129 S. Ct. at 1949 (quoting *Bell Atl.*, 550 U.S. at 556).

Although a plaintiff need not provide "detailed" facts in support of his or her allegations, the "short and plain statement" requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at ___, 129 S. Ct. at 1949 (citing *Bell Atl.*, 550 U.S. at 555); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary [under Rule 8(a)(2) of the Federal Rules of Civil Procedure]."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, ___ U.S. at ___, 129 S. Ct. at 1949 (quoting *Bell Atl.*, 550 U.S. at 555). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

### IV. RELEVANT FACTUAL BACKGROUND

Accepting all factual allegations in the Second Amended Complaint as true and drawing all reasonable inferences in favor of the nonmoving party, the facts are:

#### A. Parties

Plaintiffs are Iowa Corporations with their principal place of business in Iowa County, Iowa. Amana Farms is a wholly owned subsidiary of Amana Society. GHD is a Wisconsin corporation specializing in engineering and constructing anaerobic digesters. Excel is a Domestic Business registered with the Wisconsin Secretary of State's office.

## B. GHD's Representations

Amana Farms operates a cattle facility near Main Amana, Iowa. On or about May 10, 2006, GHD provided Plaintiffs "with a design and engineering document relating to the potential construction of an anaerobic digester." Am. Compl. at ¶ 7. The intended purpose of the digester "was to create electrical energy by processing cattle manure and paper sludge." *Id.* at ¶ 8. Plaintiffs planned to utilize the electricity generated by the anaerobic digester.

In the document, GHD made multiple representations regarding the design and operation of the digester, including that the digester was capable of processing "250 tons of paper sludge substrate . . . on a daily basis," that it would "generate 2,600 kWh of electricity on a continuous basis," and that Steve Dvorak, the GHD engineer responsible for its design, had "extensive experience in the design, installation, and operation of digester systems." *Id.* at ¶ 9. Excel later confirmed GHD's projected outputs in a certified engineering statement.

## C. Amana Farms and GHD's Contract

On October 22, 2007, Amana Farms entered into a contract with GHD covering the "[a]naerobic digester engineering, construction and installation of the digester heating system, gas mixing system, and building interior plumbing and electrical work, digester startup, and project administration." Pl. Exh. 1 (docket no. 23-1) at 3. Amana Society obtained a loan from U.S. Bank for over $2,500,000 to finance construction of the digester.

Plaintiffs allege that, in going forward with the contract for the construction of the digester and the subsequent loan to finance its construction, they relied on the representations GHD made in the May 10, 2006 design and engineering document. Construction of the anaerobic digester was completed in 2008. Plaintiffs allege that since its completion, "[t]he anaerobic digester has not performed anywhere near the levels

4

represented in the design and engineering documents" and that the "specific representations" GHD made regarding the operation of the digester were untrue. Am. Compl. at ¶ 14.

## D. Plaintiffs' Allegations

Count I alleges that "GHD was negligent in its failure to supply accurate and true information regarding the performance of the anaerobic digester and Steve Dvorak's experience in the design, installation, and operation of the anaerobic digester systems." *Id.* at ¶ 18. Count I further alleges that GHD supplied the false information for the benefit of Plaintiffs, that GHD intended that the false information influence the transaction, that Plaintiffs acted in reliance on the truth of the information and that Plaintiffs were justified in relying on such information. Plaintiffs allege that they "have suffered significant damages as a result of GHD's negligent conduct," *id.* at ¶ 24, and request a judgment for damages plus interest and costs.

## V. ANALYSIS

GHD asks the court to dismiss Count I of the Amended Complaint. GHD argues that Plaintiffs' negligent misrepresentation claim fails "under the arm's length transaction exclusion under Iowa law."[1] Motion at ¶ 4. More specifically, GHD asserts that Plaintiffs "cannot state a cause of action for negligent misrepresentation against GHD because the alleged business relationship between the parties resulted in an arm's length transaction that does not provide a basis for a negligent misrepresentation claim." Brief in Support of Motion ("Def. Br.") (docket no. 25-1) at 4.

### A. Negligent Misrepresentation

The Iowa Supreme Court generally recognizes the tort of negligent misrepresentation as it is described in the Restatement (Second) of Torts:

---

[1] The parties agree that Iowa law governs this diversity action. *See Bank of Am., N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 911 (8th Cir. 2010).

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 124 (Iowa 2001) (quoting Restatement (Second) of Torts § 552(1) (1977)).

Before applying section 552, the court must first make a "threshold inquiry . . . to determine whether a duty arises under section 552." *Fry v. Mount*, 554 N.W.2d 263, 266 (Iowa 1996); *see also Sain*, 626 N.W.2d at 124 ("As with all negligence actions, an essential element of negligent misrepresentation is that the defendant must owe a duty of care to the plaintiff.").

### 1. Duty of care

For a claim of negligent misrepresentation to exist, "the person who supplies the information must owe a duty to the person to whom the information is provided." *Sain*, 626 N.W.2d at 124. Iowa courts have narrowed the scope of the Restatement (Second) of Torts by limiting the situations in which a duty arises under section 552. *See Greatbatch v. Metro. Fed. Bank*, 534 N.W.2d 115, 117 (Iowa App. 1995). "One limitation is that the duty to use reasonable care in supplying information applies only to persons engaged in the business or profession of supplying information to others." *Id. see also Mitic Partners, LLC v. U.S. Bank Nat. Ass'n*, 605 F.3d 617, 624 (8th Cir. 2010) ("[U]nlike the Restatement, Iowa law draws a sharp distinction 'between the person engaged in the business or profession of supplying guidance to others and those commercial transactions where the parties are dealing at arm's length.'" (quoting *Haupt v. Miller*, 514 N.W.2d 905, 910 (Iowa 1994))). "Without facts to show a person is in the business of supplying information to others, no duty arises." *Hendricks v. Great Plains*

*Supply Co.*, 609 N.W.2d 486, 492 (Iowa 2000) (citing *Fry*, 554 N.W.2d at 266). "Whether such a duty exists is always a question of law for the court." *Fry*, 554 N.W.2d at 265.

Here, GHD argues that its underlying business transaction—namely, the contract with Amana Farms and the associated alleged communication with Amana Society—"was an adversarial arm's length transaction[.]" Def. Br. at 6. In arguing that the parties engaged in a commercial transaction at arm's length, GHD distinguishes its transaction with Plaintiffs from transactions where a defendant is in the business of supplying information to others. Thus, GHD argues that Plaintiffs' negligent misrepresentation claim fails because GHD owed no duty to Plaintiffs.[2]

### 2. *"In the business of supplying information"*

"No clear guideline exists to define whether a party is in the business of supplying information." *Fry*, 554 N.W.2d at 266 (quoting *Greatbatch*, 534 N.W.2d at 117). Generally, manufacturers and dealers of merchandise have not been considered to be in the business of supplying information. *Greatbatch*, 534 N.W.2d at 117. "Their businesses involve making, selling, and servicing products, and any information provided during the course of their business is incidental." *Id.* On the other hand, a duty has been readily imposed on "professions [that] directly involve the supply of information," such as accountants and investment brokers. *Id.*

At times, a party "can provide both informational and noninformational services." *Id.* Thus, whether a defendant "can be responsible for negligent misrepresentation

---

[2] For purposes of this Order, the court need not address the elements of negligent misrepresentation under the Restatement (Second) of Torts section 552. GHD does not argue the merits of Plaintiffs' negligent misrepresentation claim. Rather, GHD's and Plaintiffs' filings focus exclusively on whether the parties were dealing at arm's length or whether GHD was in the business of supplying information to others, and thus owed a duty of care to Plaintiffs.

7

depends largely on the nature of the particular transaction involved and the type of information provided." *Id*. at 118. In distinguishing between persons engaged in the business of supplying information to others in a non-adversarial capacity and commercial transactions where the parties deal at arm's length, it is important to consider whether the information was part of the product provided by the defendant, or whether it was merely incidental to the underlying transaction. *Id*.

Because there is no duty imposed on parties who deal at arm's length, negligent misrepresentation "predominately applies to situations where the information supplied harmed the plaintiff in its relations with third parties." *Sain*, 626 N.W.2d at 126. "'This means the tort does not apply when a defendant directly provides information to a plaintiff in the course of a transaction between the two parties, which information harms the plaintiff in the transaction with the defendant.'" *Mitec Partners*, 605 F.3d at 624 (quoting *Sain*, 626 N.W.2d at 126).

### *B. Application*

GHD is an engineering company in the business of designing, constructing and installing anaerobic digester components. The record shows that the transaction at issue involved, in part, the construction, installation and sale of various digester components. *See* Pl. Exh. 1 at 3. In this manner, GHD was similar to a business making and selling its products. *See Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 227 (Iowa 1998) (refusing to recognize a duty of care for a retailer in the business of selling and servicing its goods); *see also Pool v. Orkin*, No. 3:09-cv-00091-JAJ-RAW, 2010 WL 5452712, at *8 (S.D. Iowa Aug. 30, 2010) ("Iowa courts have routinely refused to extend a duty in negligent misrepresentation cases where the defendant was engaged in the sale of merchandise and made representations regarding that merchandise.").

However, Plaintiffs allege that, as a design professional specializing in engineering anaerobic digesters, GHD not only constructs and sells digester components, but is also

directly involved with supplying information.[3] Thus, Plaintiffs allege that GHD was acting in an advisory capacity when it supplied Plaintiffs with information "regarding the performance of the anaerobic digester and Steve Dvorak's experience in the design, installation, and operation of the system[.]" Am. Compl. at ¶ 17. This information allegedly harmed Plaintiffs when the digester failed to perform "anywhere near the levels represented in the design and engineering documents supplied by GHD and Excel." *Id.* at ¶ 14.

The nature of the parties' transaction can be "generally described as follows: [c]onstruction and startup of [an] anaerobic digester at Amana Farms to produce biogas for sale to the utility or the generation of electricity." Pl. Exh. 1 at 3. Prior to the construction and startup of the digester, GHD provided information regarding its projected output in the design and engineering document. The representations were not a part of the overall agreement, but were instead incidental to the construction and startup of the anaerobic digester. *See Sain*, 626 N.W.2d at 125 (explaining that information given incidental to another service imposes no duty). The record shows that Amana Farms directly retained GHD to design, construct and install the anaerobic digester—not to supply information regarding the digester. *See The Conveyor Co. v. Sunsource Tech. Serv., Inc.*, 398 F. Supp. 2d 992, 1014-15 (N.D. Iowa 2005) ("What [the defendant] provided was not information about [its product], but a [product] intended to meet [the plaintiff's] specifications.").

Further, the harm alleged in the Amended Complaint resulted from the digester's failure to perform at the level GHD represented, and not from Plaintiffs' interactions with third parties. Because GHD directly provided the representations in the course of the

---

[3] Plaintiffs cite numerous cases in which engineers have been held liable for negligent misrepresentation. Although many of the cases rely on section 552 of the Restatement, none apply Iowa law, and all are factually distinguishable from the case at hand.

transaction between the parties, and the information harmed Plaintiffs in its transaction with GHD, negligent misrepresentation does not apply.[4] *See Mitec Partners*, 605 F.3d at 624. GHD supplied information to Plaintiffs during a commercial, arm's-length transaction. *See Fry*, 554 N.W.2d at 265-66 (finding no duty when the defendant gave the plaintiffs information only in the context of a particular transaction, not to guide the plaintiff generally).

The facts alleged do not support the Plaintiffs' position that GHD was supplying information for the guidance of Plaintiffs. Therefore, Plaintiffs do not meet the threshold inquiry for purposes of a negligent misrepresentation claim. As a matter of law, GHD, in this transaction, was not in the business of supplying information to Plaintiffs, and thus owed no duty to Plaintiffs. *See The Conveyor Co.*, 398 F. Supp. 2d at 1014-15 ("[W]here the defendant was 'not in the business or profession of supplying information to [the plaintiff],' and the transaction was, instead, 'an arms-length and adversarial transaction,' the plaintiff cannot prevail on a negligent misrepresentation claim." (quoting *Jensen v. Sattler*, 696 N.W.2d 582, 588 (Iowa 2005))). Accordingly, the court shall dismiss Count I of the Second Amended Complaint.

---

[4] In their Resistance, Plaintiffs cite *Pool v. Orkin*, 3:09-cv-0091-JAJ-RAW, 2010 WL 5452712 (S.D. Iowa Nov. 2, 2005) as support for their argument. In *Pool*, the plaintiffs paid an initial fee to the defendant, a pest inspection company, for the treatment of their residence. The agreement also included an option for the regular inspection and retreatment of the plaintiffs' home for an annual fee, which the plaintiffs agreed to. The court found that the defendant was in the business of supplying information following its agreement to inspect and retreat the plaintiffs' home. The court reasoned that "the inspections were central to the bargain" made by the plaintiffs. *Id.*, at *8. Here, as explained above, the parties' transaction was not for an inspection or information, but for the design and construction of the anaerobic digester. The alleged misrepresentations occurred in the design and engineering document, which was incidental to the transaction.

## VI. CONCLUSION

In light of the foregoing, the Motion For Partial Dismissal of the Amended Complaint (docket no. 25) is **GRANTED**. Count I of the Amended Complaint (docket no. 23) is **DISMISSED**.

**IT IS SO ORDERED.**

DATED this 11th day of August, 2011.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA